# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| **STEVE BECKETT**, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>**BITCOIN DEPOT INC**, AND<br>**BITCOIN DEPOT OPERATING, LLC (D/B/A BITCOIN DEPOT)**<br><br>                Defendants. | **Case No. 1:25-cv-01450-TWP-MG**<br>Judge Tanya Walton Pratt<br>Magistrate Judge Mario Garcia |

**DEFENDANTS BITCOIN DEPOT INC. AND BITCOIN DEPOT OPERATING, LLC (D/B/A BITCOIN DEPOT)'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY OR DISMISS THE ACTION OR IN THE ALTERNATIVE TO DISMISS AND STRIKE CLASS ALLEGATIONS**

I. **INTRODUCTION**[1]

Courts across the country have consistently compelled arbitration and dismissed lawsuits challenging cryptocurrency ATM transactions under nearly identical facts—namely, *Mooneyham v. Bitcoin Depot Inc.*, 2025 WL 641722 (D.S.C. Feb. 27, 2025) and *Yilma v. Athena Bitcoin, Inc.*, No. 25-cv-00579-DDD-SBP (D. Colo. Aug. 13, 2025). Notably, Plaintiff's Response does not mention or address either *Mooneyham* or *Yilma*, despite their clear relevance and the fact that both cases directly reject the very arguments Plaintiff raises here. Like those cases, this action arises from a plaintiff who knowingly accepted clear, enforceable Terms and Conditions—including a broad arbitration clause and class action waiver—before completing the transactions at issue.

Plaintiff's Response rests on legal theories that have been uniformly rejected: that third-party criminal manipulation can void a binding contract and that clickwrap agreements or class waivers presented at an ATM are unconscionable. The law is clear—such challenges must be decided by the arbitrator, and the record demonstrates repeated warnings and robust consumer protections.

On the merits, Plaintiff's deceptive act and negligence claims fail as a matter of law. He alleges no plausible theory of reliance, intent, or duty, and seeks to hold Defendants liable for harm caused by third-party scammers—contrary to Indiana and federal law. His replevin and voluntary assumption claims are both factually and legally unsustainable. Finally, class certification is foreclosed by the individualized nature of each alleged scam and the predominance of person-specific facts. Cases with similar individualized facts deny class treatment, and Plaintiff's allegations present no basis for departing from that settled authority.

---

[1] Bitcoin Depot Inc. does not own or operate ATMs and had no interaction with Plaintiff and therefore submits this reply without waiver of any jurisdictional arguments, including lack of personal jurisdiction.

For these reasons, arbitration should be compelled or, in the alternative, all claims and class allegations dismissed.

## II. THIS COURT SHOULD COMPEL ARBITRATION

### A. *Legal Standard*

The Federal Arbitration Act ("FAA") provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided in chapter 4." Seventh Circuit courts hold that § 4 of the FAA requires courts to compel arbitration where: (1) a written arbitration agreement exists; (2) the dispute falls within the agreement's scope; and (3) the opposing party refuses to arbitrate. *See Walton v. Uprova Credit, LLC*, 722 F. Supp. 3d 824, 830 (S.D. Ind. 2024) (citing *Zurich Am. Ins. Co. v. Watts Indus., Co.*, 417 F.3d 682, 690 (7th Cir. 2005)); *see also Young v. Shipt, Inc.*, 563 F. Supp. 3d 832, 836 (N.D. Ill. 2021).

The FAA and controlling case law establish a strong presumption in favor of arbitration. *See Edmondson v. German Am. Bank*, 748 F. Supp. 3d 621, 628 (S.D. Ind. 2024) (noting the "strong presumption of arbitrability"); *CK Witco Corp. v. Paper Allied Indus.*, 272 F.3d 419, 421 (7th Cir. 2001) ("[W]hen a contract contains an arbitration clause, a strong presumption in favor of arbitration exists….").

### B. *Plaintiff Affirmatively Agreed to Arbitrate*

Plaintiff does not dispute that he was presented with Bitcoin Depot's Terms and Conditions—including a broad AAA arbitration clause—on the ATM screen and affirmatively accepted the terms by clicking "I accept the terms and conditions." Defs.' Motion to Compel or Dismiss, Brown Declaration ¶ 10(c), Ex. D at 4. "Whether an agreement to arbitrate has been formed is governed by state-law principles of contract formation." *Domer v. Menard, Inc.*, 116

2

F.4th 686, 694 (7th Cir. 2024). Courts applying Indiana law routinely enforce "clickwrap" contractual agreements where assent is manifested by clicking to accept. *See, e.g.*, *Browning v. Trans Union LLC*, No. 24-cv-00029-TWP-KMB, 2025 WL 1503973 at *3 (S.D. Ind. 2025) (noting that parties may manifest assent to contract terms "by clicking a button to accept the terms and conditions on a digital platform."); *Merchants Bank of Indiana v. Curby*, No. 1:21-cv-02669-JRS-MG, 2022 WL 16658130 at *2 (S.D. Ind. Nov. 3, 2022) ("[M]ost courts, including Indiana courts, find clickwrap to be enforceable."); *Coleman v. Coinbase*, No. 1:25-cv-01224-TWP-CSW, 2025 WL 2256117, at *2 (S.D. Ind. Aug. 7, 2025) ("Courts around the country have recognized that this type of electronic 'click' can suffice to signify the acceptance of a contract.").

Recent decisions, including *Mooneyham* and *Yilma,* have compelled arbitration on nearly identical facts. In *Mooneyham*, where a retiree was scammed into sending funds to criminals via an ATM, the court rejected the argument that "duress" or third-party psychological manipulation could defeat Defendants' clickwrap assent and the formation of an agreement, holding that the plaintiff "selected 'I accept these terms and conditions'…[and] would not have been able to proceed with her transactions without agreeing to the Terms and Conditions, which included an agreement to arbitrate." *Mooneyham*, at *4, 10. *Yilma*, likewise, enforced the arbitration agreement against a retiree scammed via ATM, finding "[c]lickwrap agreements are increasingly common and have routinely been upheld. . . From a contract law perspective, there is little controversy surrounding clickwrap agreements." *Yilma*, at *3-4 (*quoting Hancock v. AT&T*, 701 F.3d 1248, 1256 (10th Cir. 2012)) (also noting that "allegations of fraud and duress on the part of a third party will not suffice to invalidate an otherwise enforceable contract").

There is no question that all claims in this action are covered by the arbitration provision in Bitcoin Depot's Terms and Conditions. The arbitration clause broadly covers "all claims that

3

may arise under the Agreement," including statutory, tort, and contract claims. Brown Decl. Ex. A § 17.1. As in *Mooneyham*, Plaintiff was required to and did affirmatively select "I accept these terms and conditions" before completing his transactions; he would not have been able to proceed without doing so. *See* Brown Decl. ¶ 10(c), Ex. D at 4; *see also Yilma*, No. 25-cv-00579-DDD-SBP, at *4. *Mooneyham*, compelling arbitration on nearly identical facts, confirmed that the arbitration provisions in the Terms and Conditions covered the claims at issue in that case because plaintiff's claims "are all related to her use of the Bitcoin Depot ATM and are against the Bitcoin Defendants…" *Mooneyham*, 2025 WL 641722, at *11. The same result is warranted here. The national trend is clear and accelerating: courts are consistently enforcing clickwrap arbitration agreements in the context of alleged ATM-related scams, even where plaintiffs claim to have acted under duress or third-party manipulation. *See, e.g., Mooneyham*, 2025 WL 641722, at *4–5 (D.S.C. 2025); *Yilma*, No. 25-cv-00579-DDD-SBP, at *3–4 (D. Colo. Aug. 13, 2025). Plaintiff's attempt to carve an exception for his case is unsupported by any authority and contrary to these well-reasoned opinions.

### C.   *Questions Regarding the Dispute's Arbitrability are Delegated to the Arbitrator*

Plaintiff argues that the arbitration clause in Bitcoin Depot's Terms and Conditions does not "clearly and unmistakably" delegate questions of arbitrability (such as validity and enforceability) to the arbitrator, and thus the Court must resolve those threshold issues. Pl.'s Resp. at 6-8. Under Supreme Court precedent, where—as here—the parties have clearly delegated these gateway issues to the arbitrator, those questions must be decided by the arbitrator, not the Court. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–71 (2010) (enforcing arbitration agreement's delegation of unconscionability and validity challenges to arbitrator); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006) (holding that challenges to contract as a

whole—including claims of fraud, duress, or unconscionability—are for the arbitrator where the contract contains a severable arbitration clause). Indeed, courts in this District and nationwide recognize that "Reference to or incorporation of the rules and procedures of the [AAA…] may constitute clear and unmistakable evidence of a delegation clause." *Walton*, 722 F. Supp. 3d at 831-32; *see also Gilman v. Waters*, 61 F. Supp. 3d 794 (S.D. Ind. 2014).

Here, Bitcoin Depot's Terms and Conditions expressly incorporate the AAA Commercial Rules, which delegate all gateway issues—including arbitrability, validity, and enforceability—to the arbitrator. *See* Brown Decl., ¶ 6, Ex. A § 17.1 ("[S]hould a dispute arise between the parties…the parties agree to submit their dispute for resolution by arbitration before the American Arbitration Association ('AAA') in Atlanta, GA, in accordance with the then current Commercial Arbitration rules of the AAA"); AAA Commercial Arb. R. 7(a) ("The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent from the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.") Plaintiff's assertion that the Terms and Conditions fail to "clearly and unmistakably delegate" is unsupported. *See, e.g.*, *Walton*, 722 F. Supp. 3d at 831-32; *Gilman v. Waters*, 61 F. Supp. 3d at 801 (S.D. Ind. 2014).

Plaintiff cites no case law from this district in support of his argument that incorporation of the AAA Commercial Rules is not "clear and unmistakable" delegation of arbitrability issues. The sole case cited by Plaintiff, *Ajamian v. CantorCO2e*, 203 Cal. App. 4th 771 (2012), is a case from the California Court of Appeals, which predates *Gilman* and *Walton* (both cases from the Southern District of Indiana), and involved an employment agreement in an employee handbook. Pl.'s Resp. at 7. Nor does Plaintiff cite to any cases requiring specific language like "arbitrability"

5

or "gateway issues" for a delegation of these "gateway issues" to be effective. Recent decisions have rejected arguments that ATM clickwrap contracts or AAA rule incorporation failed to delegate authority. *See, e.g.*, *Gilman*, 61 F. Supp. 3d at 801 (referring to Rule 7(a) of the AAA Commercial Arbitration Rules).

Plaintiff's argument that third-party "psychological manipulation" or duress should invalidate the agreement is also foreclosed. Pl.'s Resp. at 8. Both *Mooneyham* and *Yilma* either dismissed these arguments or held that these are questions for the arbitrator, not the court. *Mooneyham,* at f.4 (stating that arbitrator should decide whether Plaintiff is bound by an agreement allegedly formed by duress); *Yilma*, at *4 (noting it is "irrelevant" that plaintiff "might have been fraudulently induced to use the bitcoin ATM by a third party"). Accordingly, the Court should hold that the parties clearly and unmistakably agreed to arbitrate "gateway issues" including arbitrability, validity, and enforcement.

    **D.**    ***Plaintiff's Unconscionability Arguments are Delegated and Fail on the Merits***

Plaintiff asserts that the arbitration clause is unenforceable because it is unconscionable. This contention fails under controlling and persuasive authority.

    *1.*    ***Unconscionability Challenges Are Delegated to the Arbitrator.***

Under Supreme Court precedent, an arbitration clause within a broader contract is severable from the remainder of the agreement. *See Buckeye v. Cardegna*, 546 U.S. at445. Courts distinguish between challenges directed specifically at the arbitration clause—which the court may decide—and those aimed at the contract as a whole, which must be decided by the arbitrator. *See Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 (2006); *see also Mooneyham*, 2025 WL 641722, at *9-11; *Walton*, 722 F. Supp. 3d at 831-32.

6

Here, Plaintiff's unconscionability arguments are almost entirely directed at the contract as a whole—pointing to the class action waiver, liability limitations, and "take-it-or-leave-it" nature of the terms. Pl.'s Resp. at 9-10 (claiming "The cumulative effect [of these terms] contravenes public policy"). Such arguments are for the arbitrator, not the Court. *See Buckeye*, 546 U.S. at 445–446 (holding that a challenge to the contract as a whole should be decided by the arbitrator, not the court); *Coleman*, 2025 WL 2256117 at *5 ("'[A]ttacks on the validity of an entire contract, as distinct from attacks aimed at the arbitration clause, are' within the arbitrator's range of knowledge."). Furthermore, Bitcoin Depot's Terms and Conditions expressly incorporate AAA Commercial Rules which, as noted above, constitutes a clear and unmistakable delegation of all gateway issues, including questions of alleged unconscionability, to the arbitrator. *See* AAA Commercial Arb. R. 7(a); *Gilman v. Waters*, 61 F. Supp. 3d 794, 801 (S.D. Ind. 2014).

### 2. Plaintiff Cannot Establish Substantive or Procedural Unconscionability

Even if the Court were to consider unconscionability, Plaintiff's arguments fail under Indiana law.[2]

**Substantive Unconscionability.** Plaintiff argues that the arbitration clause is unfair because it requires individual arbitration in Atlanta and costs may "exceed recovery." Pl.'s Resp. at 9.[3] This is incorrect. The agreement expressly permits claims under $10,000 to be resolved by phone or written submission; no travel is required. Brown Decl. Ex. A § 17.1. The use of class waivers and liability limitations is lawful and routinely upheld. *See AT&T Mobility LLC v.*

---

[2] Bitcoin Depot's Terms & Conditions, ¶ 17.1, which contains the Arbitration Clause, also contains a choice-of-law provision stating that the Agreement shall be treated as though executed in the state of Georgia and governed and construed by the laws of Georgia. Regardless of whether Indiana or Georgia law applies, the outcome remains the same for all issues.

[3] Plaintiff cites no cases in support of his substantive unconscionability arguments and merely references the Complaint.

*Concepcion*, 563 U.S. 333 (2011) (holding that parties may agree to limit the issues subject to arbitration, to arbitrate according to specific rules, and to limit with whom a party will arbitrate its disputes). Other cases from this court dealing with similar clickwrap agreements have not found unconscionability. *See, e.g.*, *Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 807 (S.D. Ind. 2022) ("[B]ecause the adequacy of arbitration remedies has nothing to do with whether the parties agreed to arbitrate or if the claims are within the scope of that agreement, these challenges must first be considered by the arbitrator").

**Procedural Unconscionability.** Plaintiff asserts the terms were presented in a "take-it-or-leave-it" manner, on a small ATM screen, and in dense legalese. Pl.'s Resp.at 10-11. Plaintiff's arguments are at odds with precedent. Clickwrap agreements-where assent is manifested by clicking "I accept"—are routinely enforced, including when presented on kiosks or digital platforms. *Browning v. Trans Union LLC*, No. 24-cv-00029-TWP-KMB (S.D. Ind. 2025); *Yilma v. Athena Bitcoin, Inc.*, No. 25-cv-00579-DDD-SBP at *3–5 (D. Colo. Aug. 13, 2025); *Coleman*, 2025 WL 2256117, at *5–6; *Mooneyham*, 2025 WL 641722 at *11. Plaintiff cites only two cases in support of this argument, *Weaver v. American Oil Co.*, 276 N.E.2d 144, 146 (Ind. 1971), and *NEC Technologies, Inc. v. Nelson*, 478 S.E.2d 769, 771 (Ga. 1996), neither of which involves clickwrap agreements and both of which predate the first cases to consider the validity of clickwrap agreements. *See Specht v. Netscape Communications Corp.*, 150 F. Supp. 2d 585 (S.D.N.Y. 2001) (one of the first cases to analyze and accept the validity of clickwrap agreements).

Plaintiff also argues that being a scam victim or under psychological manipulation should render the arbitration clause unconscionable. Courts have rejected this as a basis to avoid arbitration in ATM scam cases. Both *Mooneyham* and *Yilma* held that such arguments—alleging duress or third-party manipulation—do not preclude enforcement of an otherwise valid arbitration

8

agreement and are at most questions for the arbitrator. *See Mooneyham,* 2025 WL 641722, at *10-11 (noting alleged duress is for an arbitrator to decide); *Yilma*, at *4 ("allegations of fraud and duress on the part of a third party will not suffice to invalidate an otherwise enforceable contract").

In sum, Plaintiff's unconscionability arguments are delegated to the arbitrator and are meritless under controlling and persuasive authority. The Court should reject these arguments and compel arbitration.

### III. ALTERNATIVE GROUNDS: PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW

#### A. *Plaintiff Fails to State a Claim Under Indiana Deceptive Consumer Sales Act*

##### 1. *Plaintiff Misstates the Mens Rea Requirement*

Plaintiff fundamentally mischaracterizes the required state of mind for an IDCSA claim. The private right of action under Ind. Code § 24-5-0.5-4 only applies to "uncured" or "incurable" deceptive acts. An "incurable deceptive act" requires "intent to defraud or mislead." IDCSA § 24-5-0.5-2(8) and 4. Plaintiff attempts to lower this standard by referencing the "knowingly" standard from Ind. Code § 24-5-0.5-3, but that section governs government enforcement actions, not private lawsuits. *McKinney v. State*, 693 N.E.2d 65 (Ind. 1998), one of only two cases Plaintiff cites, involved only Attorney General enforcement and not a private right of action. Plaintiff himself concedes that "intent to defraud or mislead is an essential element of an incurable deceptive act." Pl.'s Resp. at 12, 14. The Court should reject Plaintiff's invitation to apply a lesser "known or should have known" standard.

##### 2. *Plaintiff Fails to Plead Intent with Particularity.*

Plaintiff's opposition fails to cure the core defect: he does not plead intent to defraud with particularity, as required by Fed. R. Civ. P. § 9(b). Instead, he repeatedly alleges only that Defendants "should have known" about fraud or "knew" that third parties might exploit ATMs for

9

scams—without any specific allegations of Defendants' intent to defraud Plaintiff. General references to company education materials and warnings cannot substitute for the "who, what, when, where, and how" of a fraud claim. *See* Pl.'s Resp. at 13-14, *see also United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009). Nor does Plaintiff plead actual reliance on any misrepresentation by Defendants, a necessary element for any IDCSA claim. His own Complaint admits he did not rely on Bitcoin Depot's warnings or representations. Compl. ¶ 78.

### 3. Generalized Knowledge is Legally Insufficient—Carlson is Persuasive Authority

Plaintiff attempts to distinguish *Bitcoin Depot Operating, LLC v. Carlson*, 21 N.W.3d 157, (Iowa 2025) and *In re Property Seized for Forfeiture from Cason*, 21 N.W.3d 165 (Table) (Iowa 2025) by arguing that they involved a different legal standard ("reason to know" under Restatement § 175(2)) and were limited to contract voidability. Pl.'s Resp. at 14-15. Plaintiff also claims these cases do not address broader business practices or intent to defraud. Pl.'s Resp. at 15.

While not controlling, the Iowa Supreme Court's analysis is highly persuasive.[4] Both cases involved similar facts—Bitcoin Depot ATM transactions initiated under third-party scammer pressure, where the customer later claimed duress. As the court held, generalized warning*s*, or knowledge that some customers are scammed, cannot by itself establish "reason to know" of a particular customer's duress, nor to void the contract or defeat Bitcoin Depot's rights. *Carlson*, 21 N.W.3d at 162-65 and *Cason*, 21 N.W.3d at 165. The court rejected the argument that a company's

---

[4] While Plaintiff is correct that the Iowa Supreme Court did not decide an Indiana statutory claim or address arbitration, its reasoning on the limits of generalized knowledge, intent, and property rights in the context of Bitcoin ATM scams is persuasive and highly analogous. Plaintiff's claims fail for the same reasons.

10

general awareness of possible scams creates intent or liability for every improper transaction, explaining that "the fact that Bitcoin Depot recognized risks in its industry and then warned its customers . . . does not make it liable for every improper transaction." *Carlson*, 21 N.W.3d at 165.

Here, Plaintiff's IDCSA claim is even further removed from liability, as it requires specific intent to defraud, not just knowledge of a risk. IDCSA § 24-5-0.5-2(a)(8), § 24-5-0.5-4. Plaintiff's effort to plead "systematic conduct" or "false security representations" fails to allege any specific intent or conduct toward Plaintiff—just as the Iowa court required more than generalized knowledge or warnings.

### B. *Plaintiff's Replevin Claim is Legally Deficient Under Indiana Code § 32-35-2-1*

Plaintiff fails to allege a valid claim for replevin under Indiana law. The Seventh Circuit requires a plaintiff to show "right to possession on the strength of his own title, not merely the weakness of the defendant's title or right to possession." *Whittington v. Indianapolis Motor Speedway Found., Inc.*, 601 F.3d 728, 732 (7th Cir. 2010). Plaintiff's vague assertion that he has a right to fees based on "equity and the principle that no party may profit from criminal proceeds" is unsupported by law. Pl's. Resp. at 16. Seventh Circuit courts require more concrete evidence than "equity and public policy" to demonstrate the claimant's ownership in replevin.[5] In fact, case law nationwide dictates, "[i]t has long been well established that money is generally not the proper subject of an action of replevin. The sole exception to this is where the money is marked, labeled,

---

[5] *See, e.g.*, *DBS Constr. Inc. v. New Equip. Leasing, Inc.*, 2010 WL 3672220, at *2 (N.D. Ind. 2010) (basing its holding about material goods on deeds of title, receipts of purchase, checks showing payment, and insurance documents); *BMO Harris Bank N.A. v. Salin Bank & Tr. Co.*, No. 118CV03263SEBTAB, 2020 WL 2571251, at *5 (S.D. Ind. May 21, 2020) (basing its holding about funds between banks on records of transfer); *Autocephalous Greek-Orthodox Church of Cyprus v. Goldberg & Feldman Fine Arts Inc.*, 717 F. Supp. 1374, 1397 (S.D. Ind. 1989), aff'd, 917 F.2d 278 (7th Cir. 1990) (basing its holding about material goods on certified documents showing ownership).

packaged, or otherwise capable of specific identification, such as by serial number." *Buechler v. Kelly*, No. CV88-0-86, 1988 WL 80871, at *3 (D. Neb. July 21, 1988). [6]

Plaintiff argues once more that *Carlson* and *Cason* involved a different legal standard ("reason to know" of duress under contract law) and different legal context (forfeiture/property rights, not consumer protection statutes). But both cases involved similar facts—customers who deposited cash in a Bitcoin Depot ATM while allegedly under third-party scammer duress, then later sought to reclaim those funds. In each case, the Iowa Supreme Court held that, as between the customer and Bitcoin Depot, Bitcoin Depot had the superior right to the deposited cash. *Carlson*, 21 N.W.3d at 162, *Cason*, 21 N.W.3d at 165. The court rejected the argument that generalized warnings or knowledge of scam risks was enough to void the contract or defeat Bitcoin Depot's property rights, emphasizing "the Bitcoins were what were stolen, not the cash deposited into the Bitcoin ATM," and that Bitcoin Depot's "generalized knowledge that sometimes scammers try to defraud people...is insufficient to establish that Bitcoin Depot had 'reason to know' of [the customer's] particular duress." *Carlson*, 21 N.W.3d at 162, 165; *Cason*, 21 N.W.3d at 165. The same reasoning applies here. Furthermore, Plaintiff expressly agreed that all fee payments were final and non-refundable under the Terms and Conditions. Brown Decl., Ex. A § 9.2.

    C. <u>**Plaintiff's Negligence and Voluntary Assumption of Duty Claims Are Barred by Law**</u>

---

[6] *See also City of Portland v. Berry,* 739 P.2d 1041, 1043, (Or.App.1987); *Williams Management Enterprises, Inc. v. Buonauro,* 489 So.2d 160, 163–64 (Fla.Dist.Ct.App.1986); *Equitable Life Assurance Society v. Branch,* 302 N.Y.S.2d 958, 960 (N.Y.App.Div.1969); *1967 Senior Class of Pekin High School v. Tharp,* 154 N.W.2d 874, 876 (Iowa, 1967); *Commonwealth v. Dean,* 369 A.2d 423, 424–25 (Pa.Super.1976); *Eller v. Myers,* 294 N.W. 232, 233, 234 (Iowa 1940); *Spear v. Arkansas Nat'l Bank,* 163 S.W. 508, 509 (Ark.1914); 66 Am.Jur.2d *Replevin* § 13, p. 844 (1973); 77 C.J.S. *Replevin* § 12, p. 19 (1952).

Plaintiff's negligence theory fails as a matter of law. Plaintiff cites *WEOC, Inc. v. Niebauer*, 226 N.E.3d 771 (Ind. 2024), but that case and Indiana law recognize a duty only where harm is reasonably foreseeable, and a special relationship exists. The mere provision of services, or a contract between the parties, does not create an independent duty in tort. *See Holtz v. J.J.B. Hilliard W.L. Lyons, Inc.*, 185 F.3d 732, 741 (7th Cir. 1999) (citing *Gaunt v. Peoples Tr. Bank*, 177 Ind.App. 285, 379 N.E.2d 495, 496–97 (1978) (holding that a bank customer's failure to understand that she was opening a joint account "was not due to the breach of any duty on the bank's part," as it did not act as her financial advisor)). The nature of the relationship between Defendants and Plaintiff, and the absence of any specific undertaking, forecloses any duty here.

Plaintiff's voluntary assumption of duty claim is similarly unsupported. He cites no Indiana authority holding that marketing materials, education content, or "public commitments" create a tort duty. The lone case Plaintiff references, *Pfenning v. Lineman*, 947 N.E.2d 392 (Ind. App. 2011), is factually inapposite and does not support his legal theory. Pl.'s Resp. at 20. *Griffin v. Simpson*, 948 N.E.2d 354 (Ind. Ct. App. 2011), confirms that voluntary assumption of duty is relevant, if at all, only as a component of a negligence claim—not as a standalone cause of action.

Finally, Plaintiff's negligence claims are barred by the economic loss doctrine. Plaintiff admits that tort claims of purely economic loss are barred under Indiana law and cites no support for the assertion that such claims are valid if a defendant's conduct "is independent of the contract or involves gross negligence." Pl.'s Resp. at 20. Even under the heightened scrutiny standard employed in *Residences at Ivy Quad Unit Owners Ass'n v. Ivy Quad Dev.*, 179 N.E.3d 977 (Ind. 2022), the court found that a tort claim of economic loss was only allowed because the complaint "[did] not reveal if, or to what extent, the parties were connected contractually." *Residences*, 179 N.E.3d at 983. The contract Plaintiff signed is the centerpiece of the entire dispute. All alleged

13

losses arise from the contract, and Plaintiff cites no authority allowing a tort claim where contract governs the parties' relationship and the alleged conduct.

## IV. PLAINTIFF'S CLASS CLAIMS FAIL AS A MATTER OF LAW

### A. The Class Action Waiver is Valid and Enforceable

The Terms and Conditions Plaintiff accepted contain a clear and conspicuous class action waiver. Brown Decl., Ex. A, introductory paragraphs; § 17.1. Courts in this district and nationwide routinely enforce such waivers, even in consumer contracts, so long as they are presented in a manner allowing the consumer to review and accept them. *See Scroggins v. Uber Technologies, Inc.*, 2017 WL 373299 at *3 (S.D. Ind. Jan. 26, 2017); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Plaintiff's unconscionability objections to the class waiver fail for the reasons discussed *supra*: the arbitration clause and class waiver are part of an enforceable clickwrap agreement, not hidden or forced, and courts have found similar provisions enforceable even where individual recovery is small.

### B. Plaintiff Cannot Satisfy Rule 23's Requirements of Commonality, Predominance, and Superiority

Plaintiff's proposed class cannot satisfy Rule 23's requirements:

- **Commonality**: Each putative class member's claim hinges on individualized facts: the nature of the scam, the victim's background and actions, the warnings displayed, the wallet used, and whether Bitcoin Depot had actual or constructive notice. These facts vary widely and defeat any common questions. *See Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 498 (7th Cir. 2012).

- **Predominance**: The Seventh Circuit requires that common issues "predominate" over individualized ones. Here, each member's entitlement to relief depends on specific

14

interactions, individualized causation, and damages calculations. *See Parko v. Shell Oil Co.*, 739 F.3d 1083, 1085 (7th Cir. 2014); *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 498 (7th Cir. 2012).

- **Superiority**: Individual issues of causation, reliance, and damages would require a series of mini-trials, making class treatment inefficient and inappropriate. *See Roe v. Bridgestone*, 257 F.R.D. 159, 172–173 (S.D. Ind. 2009) (holding that class action was not superior method for resolving controversy).

### C. Plaintiff's Class Allegations Should Be Stricken at the Pleading Stage

Courts may strike class allegations at the pleading stage where it is clear, from the face of the complaint, that the class cannot be certified as a matter of law—such that no amount of discovery could render the class certifiable. *See DuRocher v. National Collegiate Athletic Ass'n*, No. 1:13-cv-01570-SEB-DML, 2015 WL 1505675 at *4–*7 (S.D. Ind. Mar. 31, 2015). Here, Plaintiff's class definition is facially defective, as adjudication would require individualized determinations for every class member, defeating commonality and predominance. No amount of discovery can cure these defects.

### VII. CONCLUSION

Plaintiff's opposition fails to overcome clear contractual and legal barriers to his claims. Controlling as well as persuasive authority compels arbitration of all claims in precisely these circumstances. Alternatively, Plaintiff's claims fail as a matter of law on the merits and cannot proceed on a class basis. Defendants respectfully request that the Court compel arbitration and stay or dismiss the action, or, in the alternative, dismiss all claims and strike Plaintiff's class allegations.

September 24, 2025								Respectfully submitted,

BITCOIN DEPOT, INC.,
BITCOIN DEPOT OPERATING,
LLC d/b/a/ BITCOIN DEPOT

By their counsel,

*/s/ Jena Valdetero*
Jena Valdetero
Illinois Bar No. 06290948
GREENBERG TRAURIG, LLP
360 N Green St. Suite 1300
Chicago IL, 60607
Tel: 312-456-1025
jena.valdetero@gtlaw.com


*/s/ Nicole Narotzky*
Nicole Narotzky (admitted pro hac vice)
GREENBERG TRAURIG, LLP
90 S. 7th St., Suite 3500
Minneapolis, MN 55402
Tel: 612-259-9700
Nicole.Narotzky@gtlaw.com

# CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that I caused a true and correct copy of Defendants' ***Reply to Plaintiff's Response to Defendants' Motion to Compel Arbitration and Stay or Dismiss the Action or in the Alternative to Dismiss and Strike Class Allegations*** to be electronically filed with the Clerk of the United States District Court for the Southern District of Indiana on September 24, 2025, and served upon the following counsel of record for the Plaintiff by electronic transmission through the Court's ECF system:

>Brian D. Flick and Marita I. Ramirez
>DannLaw
>15000 Madison Avenue
>Lakewood, OH 44107
>
>
>*Attorneys for Plaintiff*
>
>/s/ Jena Valdetero